**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN HARDING,** | : | **CIVIL ACTION NO. 3:19-CV-1882** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN J. RANSOM,** | : | |
| | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

This is a habeas corpus case under 28 U.S.C. § 2254 in which petitioner Ryan Harding challenges his 2014 conviction and sentence for third-degree murder and possession of a firearm without a license in the Lackawanna County Court of Common Pleas.  We will deny the petition for writ of habeas corpus with prejudice.

I.      **<u>Factual Background & Procedural History</u>**

The state courts of Pennsylvania have succinctly summarized much of the relevant background.  In May 2014, Harding was charged in a seven-count indictment with first-degree murder, third degree murder, two counts of conspiracy to commit murder, aggravated assault, illegal possession of a firearm, and possession of a firearm without a license arising from the shooting death of Rashan Crowder.  <u>Commonwealth v. Harding</u>, No. 13 CR 1885, 2015 WL 13779112, at *2 (Lackawanna Cty. Ct. of Common Pleas, Apr. 13, 2015).  On July 28, 2014, Harding pleaded guilty to third-degree murder and possession of a firearm without a license pursuant to a plea agreement in which he agreed to an open plea on those two counts and dismissal of the remaining counts.  <u>Commonwealth v. Harding</u>, No. 1593

MDA 2018, 2019 WL 2267267, at *1 (Pa. Super. Ct. May 28, 2019); see also Doc. 6-2 at 2-3.  He was sentenced to 20-40 years of imprisonment on the murder charge and 3 ½-7 years of imprisonment on the firearm charge, resulting in an aggregate sentence of 23 ½-47 years of imprisonment.  Id.  Harding appealed to the Superior Court, arguing that his sentence was manifestly excessive.  Commonwealth v. Harding, No. 4 MDA 2015, 2016 WL 417385, at *3 (Pa. Super. Ct. Feb. 1, 2016).  The court affirmed the sentence on February 1, 2016.  Id. at *5.  Harding filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on July 6, 2016.  Commonwealth v. Harding, 141 A.3d 478 (Pa. 2016).

Harding filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") on July 19, 2018.  Harding, 2019 WL 2267267, at *1.  Harding argued, inter alia, that he received ineffective assistance of counsel because counsel purportedly told him that he would receive a sentence of 15-30 years imprisonment if he agreed to plead guilty.  Id.  The Court of Common Pleas dismissed the PCRA petition and Harding appealed.  Id.

The Superior Court affirmed.  Id. at *4.  The court reasoned in relevant part that contrary to Harding's claim of ineffective assistance of counsel, Harding had expressly stated during his plea hearing that he was entering an open plea and that no promises had been made to him in exchange for pleading guilty.  Id. at *3.

Harding filed the instant petition for writ of habeas corpus on October 16, 2019, and the court received and docketed the petition on October 30, 2019.  (Doc. 1).  Harding raises the same ineffective assistance of counsel claim that he raised

2

before the Court of Common Pleas and the Superior Court in his PCRA proceedings. (Id.)

Harding's ineffective assistance of counsel claim is predicated on a letter, dated July 14, 2014, he received from his defense counsel—apparently after one of their initial meetings (Doc. 6-2 at 3). (See Doc. 1 at 16-18). Generally speaking, the letter purports to summarize this meeting between Harding and defense counsel and to update Harding on the status of plea negotiations in Harding's criminal case. (Id.) The letter indicates that defense counsel sought a sentencing range of 5-10 years, but that counsel for the Commonwealth had offered a much higher sentencing range of 20-40 years. The letter suggests that plea negotiations were shared with the trial judge, who allegedly expressed his willingness to impose a sentence of 15-30 years provided, however, that the parties could agree on such a range. (Id.) It is an understatement to note that defense counsel's July 14, 2014, letter does not conform to reasonable standards of professional conduct. The letter is rife with syntactical errors and contains numerous ambiguities as to what plea offers had been formally extended and whether the court had agreed to impose any particular sentence. The only possible reaction to this letter is confusion.

Two weeks after counsel's letter, the Court of Common Pleas conducted a change of plea hearing on July 28, 2014. During the colloquy, the court questioned Harding as to whether any promises had been made to him regarding the sentence he would receive:

THE COURT:     Okay.  Now, I heard your lawyer say that essentially this is an open plea, no promises have been made to you with regard to any sentences, do you understand that to be true.

MR. HARDING:     Yes.

THE COURT:       Okay.  What do you understand your exposure to be?

MR. HARDING:      Excuse me?

THE COURT:        How much time are you looking at in a worst-case scenario here?

MR. HARDING:      Twenty to forty for the third degree and --

THE COURT:         You're right.

MR. HARDING:      -- I'm not sure about the firearm offense.  Three to seven for the firearm.

(Doc. 6-2 at 9-10).  Harding additionally confirmed that other than the open plea agreement, no promises had been made to him to induce his guilty plea.  (Id. at 41).

Harding asserts that counsel's communication two weeks prior to his plea hearing constitutes ineffective assistance of counsel because it interfered with his ability to enter a knowing, voluntary, and intelligent guilty plea.  (Doc. 1 at 5).  Respondents responded to the petition on April 1, 2020, arguing that the petition should be dismissed as untimely, or alternatively denied on its merits.  (Doc. 6).  We ruled that the petition was timely on May 6, 2021 and ordered respondents to re-serve Harding with a copy of their response.  (Doc. 12).  Counsel subsequently entered an appearance on Harding's behalf and Harding filed a reply brief through counsel on July 20, 2021, arguing that the court should conduct an evidentiary

hearing to fully address his claim.  (Id.)  Respondents filed a sur reply on July 21,

2021.[1]  (Doc. 23).

## II.    **Standard of Review**

Harding's ineffective assistance of counsel claim was decided on the merits in

state court and is accordingly governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), which states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to

meet."  Mays v. Hines, 592 U.S. __, 141 S. Ct. 1145, 1149 (2021) (quoting Harrington

v. Richter, 562 U.S. 86, 102 (2011)).  Federal habeas corpus relief is meant to guard

against "extreme malfunctions in the state criminal justice systems" and is not

meant to substitute for "ordinary error correction through appeal."   Harrington,

562 U.S. at 102-03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J.

---

[1] We will not consider the substance of the sur reply because respondents did
not obtain leave of the court before filing it.  See M.D. Pa. L.R. 7.7 (stating that sur
replies may not be filed "without leave of the court").

concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions," Dunn v. Reeves, 594 U.S. __, 141 S. Ct. 2405, 2407 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement." Mays, 141 S. Ct. at 1149 (quoting Harrington, 562 U.S. at 102).

**III.   Discussion**

At the outset, we will reject Harding's request for an evidentiary hearing. Federal habeas courts "cannot conduct evidentiary hearings to supplement the existing state court record" when the petitioner's claim was adjudicated on the merits in state court. Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir. 2011). The court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). We turn our attention to the merits of Harding's ineffectiveness claim.

To obtain habeas corpus relief based on ineffective assistance of counsel, petitioners must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance caused prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's analysis as to whether counsel's performance was deficient must be "highly deferential" to counsel, and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate. Dunn, 141 S. Ct. at 2410. The

court must apply a high level of deference both to counsel's actions and to the state

court's determination that counsel's actions were constitutionally adequate.  Id.;

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540

U.S. 1, 5-6 (2003)).  The federal court may only grant habeas corpus relief if "*every*

'fairminded jurist' would agree that *every* reasonable lawyer would have made a

different decision." Dunn, 141 S. Ct. at 2411 (emphasis in original) (quoting

Harrington, 562 U.S. at 101).

Habeas corpus relief may be granted for the ineffective assistance of counsel

during plea proceedings.  Lafler v. Cooper, 566 U.S. 156, 162 (2012).  To provide

effective assistance, counsel must "give a defendant enough information 'to make a

reasonably informed decision whether to accept a plea offer.'"  United States v. Bui,

795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir.

2013)).  In determining whether counsel's allegedly deficient performance caused

prejudice to the petitioner, the court should consider "whether there is a reasonable

probability that, but for counsel's errors, the petitioner would have foregone a guilty

plea and insisted on trial." Velazquez v. Superintendent SCI Fayette, 937 F.3d 151,

162 (3d Cir. 2019) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Harding claims that his counsel's July 14, 2014 letter interfered with his

ability to enter a knowing, voluntary, and intelligent guilty plea.  (Id. at 5).  In the

relevant portions of the letter, which we quote *verbatim ac litteratim*, counsel

provides this largely unintelligible summary of his meeting with Harding:

> Thus, during our meeting, it was discussed the status if any, of your
> plea negotiations and offer.  It was communicated that we were
> seeking a 5-10 years and the offer extended by the District Attorney's

Office of 3RD degree murder: 20-40 years.  In communicating the
current positions of the parties to the Court, there were discussed of
the middle ground which would in turn put you at a 15-30-year
sentence followed by 10-years of special probation supervision.  The
Court indicated that if this offer were put on the table and accepted by
us than the Court would be willing to impose the above-mentioned
sentence, accordingly.  Further, in our discussion, you and I talked
about the range of sentencing if we were to go to trial presenting our
defense strategy and if we were successful the potential standard
range sentences that could be imposed under the sentencing
guidelines.  This, if you review the paper I left with you, is outlined on
that sheet according to the sentence if successful.  So, and again, as we
said, the sentence the Court is willing to accept for the plea is
significantly less than the sentence it could impose if we were
successful.  Plus, we did the alternative and reviewed the sentence you
would receive if we were unsuccessful and the Court imposed a
sentence for the 3RD Murder (the charge a part of the plea), and the
remaining charges underlying the offense was obviously, much greater
almost double the time previously stated above as it relates to the
charges, if we were successful at trial.  Finally, if you were to take the
plea in this case, you would receive a sentence in the low-end of the
standard range of the sentencing guidelines, which would be legally
and practicably impossible otherwise.

. . .

In closing, you asked me to before making an final decision attempt to
see if there is another alternative arrangement that could be made, a
change in the numbers lets say; this attempt and discussion did occur
and it has been indicated that this is the best the offer and
consequently the deal is going to get, and I have no reason to expect
any changes.

So, let me tell you, Ryan, the goal is always to put you in a better
position during a plea and discussion than would be if you were to go
to trial, and in this case, I feel I was successful in accomplishing this
goal for you.  Therefore, when taken all the information included in
this letter in conjunction with the defense strategy discussion we had
regarding certain legal arguments we could advance at trial and their
faults, it is my opinion at this time that we offer the District Attorney's
Office a plea as discussed above in this letter.

(Id. at 17-18 (errors in original throughout).)

8

Defense counsel's letter is incomprehensible.  In three paragraphs of poorly written, dense, and vexing prose, defense counsel's letter veers unpredictably between statements suggesting that a plea deal had already been reached and statements indicating that no formal plea offers had yet been extended by the Commonwealth.  With respect to the critical issues of defense strategy and counsel's advice regarding a plea agreement, this letter is completely unintelligible.  Were our analysis confined to the issue of whether counsel provided adequate representation via the subject correspondence, the conclusion would be clear: counsel's letter unmistakably falls below an objective standard of reasonableness.

Our analysis, however, is not so confined, as we must also consider whether Harding suffered prejudice as a result of counsel's incompetence.  The Superior Court considered and rejected Harding's claims on the merits, concluding that Harding suffered no prejudice because there was "ample evidence to show [Harding] understood that there was no agreement as to the particular sentence that he would receive, his open plea left his sentence to the discretion of the trial court, and that he had not been promised any particular sentence in exchange for entering an open plea."  Harding, 2019 WL 2267267, at *3.

Based on Harding's testimony during the plea colloquy, we cannot conclude that the Superior Court's conclusion was unreasonable.  Any confusion Harding had after reading counsel's letter is erased by the trial court's extensive plea colloquy.  See United States v. Fazio, 795 F.3d 421, 427 (3d Cir. 2015) (noting that defendant's confusion caused by erroneous advice from counsel is remedied by court's sufficiently extensive plea colloquy); accord United States v. Shedrick, 493

F.3d 292, 299 (3d Cir. 2007).  Harding acknowledged several times during the colloquy that he was entering an open plea, that no promises had been made to him regarding the sentence he would receive, and that he was facing a potential sentence of 20-40 years of imprisonment for the murder charge as well as an additional 3 ½ to 7 years on the gun charge.[2]  We must presume that Harding's

---

[2] The relevant portions of the plea colloquy are reproduced below.  We also note that defense counsel confirmed on the record that, immediately prior to the hearing, he and Harding "fully went over not only certain sentencing guidelines and ranges, but also the charges, the maximum charges, and made an offer . . . [to] an open plea to two counts" of the seven counts pending against Harding.  (Doc. 6-2 at 2).

     THE COURT:     Okay.  Now, I heard your lawyer say that essentially this is an open plea, no promises have been to you with regard to any sentences, do you understand that to be true?
     MR. HARDING:     Yes.
     THE COURT:     Okay.  What you do you understand your exposure to be?
     MR. HARDING:     Excuse me?
     THE COURT:     How much time are you looking at in a worst-case scenario here?
     MR. HARDING:     Twenty to forty for the third degree and - -
     THE COURT:     You're right.
     MR. HARDING:     - - I'm not sure about the firearm offense.  Three to seven for the firearm.
     THE COURT:     All right.  So, you know, you're 19 years old, so you're looking at sentences that could add up to twice as long as you've been on this earth, right?
     MR. HARDING:     Yes.

(Id. at 9-10).

     THE COURT:     . . . Here's basically what you're pleading guilty to, okay? . . . Count two is murder of the third degree. . . . It's a Felony one, and theoretically there's a $15,000 fine and a 40 years maximum.  We already talked about the maximum. . . .

(Id. at 25-26).

THE COURT:         Okay.  The other one is that on the 5th of May 2013 in Lackawanna County, you're accused of committing the crime of count seven of carrying a firearm without a proper license, 18th volume of the Pennsylvania Crimes Code Consolidated Pennsylvania Statutes Annotated, Section 6106(a)(1). That is a Felony three, subject to a $15,000 fine and a seven year maximum.

(<u>Id.</u> at 27).

THE COURT:         Okay.  So now we've got the basics down.  I want to ask you that has anybody today promised you anything, other than the open plea that we've talked about, or used any force or threatened you or coerced you in any way to enter this plea of guilty?

MR. HARDING:     No.

(<u>Id.</u> at 27-28).

THE COURT:         . . . This is an open count, I have a big range there.

There's obviously guidelines that are gonna come to me based upon what your prior record might be and based upon the offense gravity scores that are involved for the two offenses you're pleading guilty to, but I'll get - - this sentence might happen in two months from now.

In the meantime they'll put together a little dossier or a booklet about Ryan Harding and I'll get to read all about you and your good points and your bad points, do you understand that?

MR. HARDING:     Yes.

THE COURT:         And that's the kind of information I need in order to impose a sentence intelligently.  So I don't know what I'm gonna do so it is an open plea, do you understand that?

MR. HARDING:     Yes.

(<u>Id.</u> at 37-38).

THE COURT:         Okay.  All right.  Other than the open plea, any other promises made to you?

MR. HARDING:     No.

(<u>Id.</u> at 41).

THE COURT:         Okay.  Do you understand that I'm not bound by any agreement?  I mean, I could decide that I want to go in the aggravating range or I could decide I want to go in the mitigating range.  I don't know yet.  I'll know you when I sentence you but I don't know you yet, do you understand that?

MR. HARDING:     Yes.

(<u>Id.</u> at 41-42).

statements were truthful.  See Blackledge v. Allison, 431 U.S. 63 (1977) (noting that statements made during a plea hearing "carry a strong presumption of verity"); accord United States v. James, 928 F.3d 247, 256 (3d Cir. 2019).  And Harding has not pointed to sufficient evidence in the record to rebut that presumption.

To the contrary, the record reflects that Harding and his counsel engaged in extensive discussions after Harding received defense counsel's July 14, 2014 letter. (See Doc. 6-2 at 2 (Atty. Brown: "And, Your Honor, I've had a chance to speak with Ryan both today and Saturday, after discussions with the District Attorney's Office it's our intention to enter a plea today."); see also id. at 28 (confirming "long session" between Harding and his attorney prior to plea hearing).)  Hence, Harding had ample opportunity to discuss the contents of the July 14, 2014, letter with his attorney and to clear up any residual confusion.  Moreover, Harding's decision to agree to an open plea is entirely logical given that the plea agreement resulted in the dismissal of five other charges—including the first-degree murder charge— thereby eliminating more severe penalties.  We will accordingly deny the petition

---

THE COURT:     I want to make sure we're on the same page.  Okay, so I have, 15 says, (Reading) Do you understand that the maximum penalty of the charge you're pleading guilty to, murder in the third degree, the maximum is 40 years, do you understand that?
MR. HARDING:     Yes.
THE COURT:     And the maximum on possession of a firearm is seven years, okay?
MR. HARDING:     Yes.
THE COURT:     So if I were to do consecutive it would be 47 years.
MR HARDING:     Yes.

(Id. at 45-46).

because Harding has not shown a reasonable probability that he "would have foregone a guilty plea and insisted on trial" if not for the actions of counsel.  See Velazquez, 937 F.3d at 162.

**IV.    Conclusion**

We will deny the petition for writ of habeas corpus with prejudice.  A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further.  Buck v. Davis, 580 U.S. __, 137 S. Ct. 759, 773 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     February 4, 2022